IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANI PHARMACEUTICALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 17-1097 |
| ) | |
| METHOD PHARMACEUTICALS, LLC ) | |
| and MATTHEW SCOTT TUCKER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Geoffrey G. Grivner, BUCHANAN, INGERSOLL & ROONEY, P.C., Wilmington, DE; S. Lloyd Smith, James T. Wilcox, Alexandre H. Gapihan, BUCHANAN, INGERSOLL & ROONEY, P.C., Alexandria, VA – attorneys for Plaintiff

J. Clayton Athey, Eric J. Juray, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; Christopher J. Schwegmann, Jared D. Eisenberg, LYNN PINKER COX & HURST, LLP, Dallas, TX – attorneys for Defendants

January 11, 2019
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the motion of Defendants Method Pharmaceuticals, LLC ("Method") and Matthew Scott Tucker ("Tucker") (collectively "Defendants") to "Dismiss Under Federal Rule of Civil Procedure 12(b)(2) Or, In the Alternative, Transfer Venue" to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). (D.I. 11). Plaintiff ANI Pharmaceuticals, Inc. ("Plaintiff" or "ANI") opposes both dismissal and transfer, but requests that, should the Court deem transfer proper, the case be transferred to the United States District Court for the District of Minnesota. (D.I. 13).[1] For the reasons set forth below, Defendants' motion to transfer is granted, and this case will be transferred to the Northern District of Texas.

I.  **BACKGROUND**

Plaintiff filed its Complaint against Defendants on August 7, 2017 alleging violations of §§ 43(a) and 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a), as well as a Delaware state law claim for deceptive trade practices, under 6 Del. C. § 2532, and a common law tortious interference claim. (D.I. 1 at ¶¶ 43-72). The Complaint states "[t]his Court has personal jurisdiction over Defendants because the Defendants have solicited sourcing contracts with McKesson Corp. [("McKesson")], a Delaware Corporation that distributes pharmaceuticals at a retail sale level throughout the District." (*Id.* at ¶ 11). Further, the Complaint alleges that "Defendant Tucker, directed, sanctioned, actively participated in, and voluntarily and intentionally caused the above-

---

[1] On November 19, 2018, the Court ordered the parties to "update the Court on or before December 13, 2018 as to whether any additional information regarding personal jurisdiction has been obtained since the original briefing." (D.I. 45 at 2). On December 13, 2018, Defendants' counsel, on behalf of all parties, informed the Court that "no additional information regarding personal jurisdiction has been obtained since the original briefing on . . . [the] motion to dismiss (D.I. 11)." (D.I. 46).

1

from Federal law, the underlying action and its potential results have a direct connection to the Northern District of Texas.

### 11. Public policies of the fora

Neither Plaintiff nor Defendants address the relative public policies of hearing the case in District of Delaware versus the Northern District of Texas, and thus the Court finds this factor to be neutral.

### 12. Familiarity of the trial judge with the applicable state law in diversity cases

Neither Plaintiff nor Defendants address this factor. Two counts in Plaintiff's Complaint arise under the federal Lanham Act, and thus the familiarity of the respective districts with state law is unnecessary with respect to these claims. The remaining two counts allege basic claims of tortious interference and deceptive trade practices. The Court finds this factor to be neutral.

### 13. Balancing the private and public factors

A review of the twelve *Jumara* factors counsels the Court that a transfer of this case to the Northern District of Texas is proper. Eight factors weigh at least somewhat in favor in transferring the case, while the remaining four are neutral. Though a plaintiff's choice of venue is generally provided paramount consideration under *Jumara*, the Court's inability to assert personal jurisdiction over one of the defendants undermines that deference here. Transfer to the Northern District of Texas would allow for this case to be heard in its entirety, and thus, the Court finds that transfer is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss, but grants their motion to transfer the case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.

        9.       <u>Relative administrative difficulty due to court congestion</u>

This factor is neutral. The Court takes judicial notice of the most recent Judicial Caseload Profiles[8], as of September 30, 2018, which indicate that the median length of time between filing and trial for civil cases is 28.7 months in the District of Delaware and 28.0 months in the Northern District of Texas. Though this number slightly favors transfer, the District of Delaware has only recently returned to full capacity with four sitting judges and the September statistic may reflect a longer period than will exist moving forward. Nevertheless, because the above qualification is speculative, and the Court is unaware of what factors may currently affect the Northern District of Texas, the Court will rely upon the September 2018 statistics and find that the significantly similar period of adjudication through trial favors neither party with respect to this factor.

        10.       <u>Local interest in deciding local controversies at home</u>

This factor slightly favors transfer. Other than Plaintiff's selection of this district, the controversy has no significant connection to Delaware. Plaintiff correctly asserts that "the local interest factor is typically neutral in a case that asserts claims under Federal law as they raise controversies that are more properly viewed as national, not local, in scope." (D.I. 13 at 18) (citing *Graphics Properties Holding Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2 320, 330 (D. Del. 2013)). Method is a small, Texas company with fewer than ten employees, and is alleged to have contracted with a distributor in Texas to sell a non-approved EEMT drug and has contracted to list that drug on a database accessible in Texas and nationally. The Court finds that Texas may have a local interest in adjudicating this case. Though the main cause of action arises

---

[8]     The September 2018 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf.

exclusively or even primarily" in the Northern District of Texas. *See VLSI*, 2018 WL 5342650 at *7. Because, however, records have been identified as being available in the Northern District of Texas, albeit not exclusively, and no records have been identified as available in this district, the Court finds this factor to weigh slightly in favor of transfer to the Northern District of Texas.

### 7. Enforceability of the judgment

Neither Plaintiff nor Defendants address any disparity between the enforceability of the judgment between the District of Delaware and the Northern District of Texas in their papers and thus the Court finds this factor to be neutral.

### 8. Practical considerations

This factor favors transfer. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Here, Defendants argues that "the Northern District of Texas imposes no more of a burden for Plaintiff than litigating in Delaware and is much less burdensome for defendants" who are in Texas, along with pertinent witnesses and evidence related hereto. (D.I. 18-19). Plaintiff simply responds that "transportation through and from the District of Delaware is convenient, inexpensive, and unburdensome." (D.I. 13 at 18). Though the Wilmington, Delaware area is serviced by the Philadelphia International Airport and relatively accessible to the parties, the Court cannot avoid the reality that trial in this district would require all parties, witnesses, experts, and evidence to be transported to Delaware. In contrast, whereas Method and Mr. Tucker are located within the Northern District of Texas, and significant evidence is also located therein, only Plaintiff will be required to travel to litigate its case should it be transferred, which would be necessary regardless. The Court concludes that trial in this matter would be easier and greatly less expensive if transferred to the Northern District of Texas.

718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). Moreover, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).

There is no dispute that Defendants' contacts with McKesson occurred solely in Texas and the United Kingdom and "[non-party witnesses] involved in Method's efforts to allegedly improperly 'solicit' EEMT 'sourcing contracts' are in Texas and the United Kingdom." (D.I. 12 at 17). Each of these locations is outside of the reach Rule 45 of the Federal Rule of Civil Procedure. Moreover, the "Defendants' Unlawful Conduct" section of Plaintiff's Complaint identifies entities with whom Defendants did business, including: Syntho Pharmaceuticals, Inc. ("Syntho"), McKesson, Medi-Span, and First Databank. That Plaintiff has identified these entities in its Complaint means that individuals from each are presumably necessary for the proper adjudication of this matter.[7]

### 6. Location of books and records

This factor slightly favors transfer. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." 55 F.3d at 879. Although Defendants argue that "the bulk of the evidence is likely to come from Defendants," (D.I. 12 at 18), they have not identified any evidence that could not be produced in this, or any, district. Nor have Defendants provided any indication that any "documentary evidence relevant to this action is found

---

[7] Neither party has provided information relating to the location of non-party witnesses from Syntho, Medi-Span, or First DataBank and thus the Court cannot make a determination about the convenience to potential witnesses from these entities or whether such witnesses could be properly subpoenaed to appear at trial in Delaware.

16

(D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corporation*, C.A. No. 13-1804-GMS, 2015 WL 632026 at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted). In *MEC*, the Court found this factor weighed in favor of transfer where "the parties' physical locations are not convenient to Delaware and [plaintiff's] litigation costs will likely remain the same because its . . . employees must travel" regardless of transfer. *Id.* at 226. Here, neither entity has a principal place of business in Delaware. Defendants are in the Northern District of Texas and Plaintiff is in Minnesota, which is geographically closer to the Northern District of Texas than this district. (D.I. 12, Exs. 4-6).

Plaintiff's only expressed convenience of litigating in Delaware is that "ANI's executives routinely travel to the region encompassing the Northeast Corridor." (D.I. 13 at 16). This has no bearing on the Court's consideration of this factor. As for logistical and operations costs for trial, Plaintiff will have to travel to litigate this case regardless of whether transfer is granted or denied, and thus this subfactor is neutral with respect to ANI. The logistical and operational costs for Method and its employees to travel to Delaware, however, would be more complicated and more expensive than a trial occurring in the Northern District of Texas. Though it appears that Method has fewer than ten employees, no information has been provided with respect to ANI and thus the Court cannot determine the parties' relative ability to bear the costs associated with litigating this case in Delaware as opposed to Texas. Nevertheless, for the same reasons articulated in *MEC*, the Court finds that this factor favors transfer.

     5.    <u>Convenience of the witnesses</u>

This factor slightly favors transfer. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650 at *7 (citing *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d

non-party witnesses are in the district, and evidence is in the district. (D.I. 12 at 16). Plaintiff does not challenge that it is Defendants' preference to litigate in the Northern District of Texas.

        3.      <u>Whether the claim arose elsewhere</u>

This factor favors transfer. Defendants argue that "to the extent Plaintiff has any claims at all . . . they arose outside of Delaware." (D.I. 12 at 16). Specifically, Defendants assert that the "alleged 'acts' of 'false advertising' would have originated from Method's principal place of business in the Northern District of Texas and any purported 'solicitation' . . . of McKesson occurred through communications with individuals located in Texas and abroad." (*Id.* at 16). Plaintiff does not counter Defendants' assertions[6]. On the record before the Court, it appears that all the alleged violations occurred in relation to Defendants' actions or conversations with individuals or entities either in Texas or abroad. As such, this factor weighs in favor of transfer to the Northern District of Texas where Defendant's actions, and potential violations of the Lanham Act, occurred.

        4.      Convenience of the parties as indicated by their relative physical and financial condition

This factor favors transfer. Determining convenience of the parties requires the Court to consider "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225

---

[6] In discussing jurisdiction, Plaintiff argues that Defendants' distribution contract with McKesson and listing on national drug databases would bring its EEMT drug products into Delaware. (D.I. 13 at 4-7). Plaintiff, however, has made no showing that any such products have entered the market and the Court, on this record, cannot find that a claim has arisen *in* Delaware.

Defendants nevertheless argue that Plaintiff's choice "should not be accorded deference" because "Plaintiff's 'nerve center' and corporate operations are also located outside of Delaware," and Plaintiff has "no 'rational and legitimate reason' for bringing suit in Delaware." (D.I. 12 at 15). As another court in this district has found, however, it is "difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere." *VLSI Tech. LLC, v. Intel Corp.*, C.A. No. 18-966-CFC, 2018 WL 5342650 at *5-6 (D. Del. Oct. 29, 2018) (concluding that the plaintiff, a company registered in Delaware, was entitled to "paramount consideration" in its choice of forum). Indeed, "[n]either *Shutte* nor *Jumara* hold or even intimate that a plaintiff's motive in selecting its forum choice is relevant for § 1404(a) purposes." *VLSI Tech*, 2018 WL 5342650 at *2. The Court, thus, does not find that Plaintiff's motives or reasoning for bringing this case in Delaware to be relevant to the inquiry of whether Plaintiff's forum preference favors transfer.

The issue, here, however, relates to the parenthetical in *Burroughs* – "[a]ssuming jurisdiction and proper venue." 392 F. Supp. at 763 n.4. The Court has found that it lacks personal jurisdiction over at least one of the named Defendants. Thus, "jurisdiction and proper venue" cannot be assumed as to both defendants. The Court finds that judicial economy favors the prosecution of a case in its entirety, and that that weighs in favor of transferring the case to the Northern District of Texas where there is no question of jurisdiction.

    2.    <u>Defendants' preference</u>

This factor favors transfer. Defendants argue they "have a legitimate and rational reason for preferring to litigate in the Northern District of Texas" because they are located the district,

*Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985) ("We have previously held, however, that a district court lacking personal jurisdiction can transfer a case to a district in which the case could have been brought originally." (citations omitted)).

    2. <u>Personal Jurisdiction with respect to Method</u>

After reviewing the papers, it appears that the question of personal jurisdiction over Method presents a closer call. Having found, however, that the Court lacks jurisdiction over one of the defendants, Tucker, in the interests of justice, and to avoid potential inequities from bifurcating this case, the Court turns to whether it should exercise its discretion to transfer the case to the United States District Court for the Northern District of Texas regardless of the existence of its jurisdiction over Method.[5]

**B. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

The Court considers the private and public factors set forth in *Jumara* in connection with its transfer inquiry.

    1. <u>Plaintiff's forum preference</u>

This factor normally does not favor transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

---

[5]  To the extent Plaintiff requests transfer to District of Minnesota instead of the Northern District of Texas, the Court finds Plaintiff has not made any showing that such a transfer is warranted, especially in light of the personal jurisdiction issues relating to Tucker.

12

Similarly, in *Brasure's*, this Court found no personal jurisdiction over the defendant-corporate employees, because "[a]ny contacts the individual defendants may have had with Delaware occurred solely in connection with [the corporate defendant]." *Brasure's*, 2017 WL 3269082, at *4-5. Because the defendants "as individuals, ha[d] not engaged in any conduct in Delaware," there was no basis for the Court's exercise of jurisdiction over them. *Id.* at *5. Here, too, Plaintiff's Complaint is devoid of facts demonstrating that Tucker performed any acts in Delaware, whether in his fiduciary capacity or otherwise. Thus, Plaintiff's claims against Tucker must be dismissed. *See id.* at *4-5; *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc. et al.*, C.A. No. 09-22-SLR-MPT, 2009 WL 5184350, at *5 (D. Del. Dec. 23, 2009) (M.J., Thynge), adopted as modified by 2010 WL 1337621 (D. Del. Mar. 31, 2010) (fiduciary shield doctrine applied, where "[b]eyond mere conclusory statements, there is nothing to corroborate that Galinos personally and knowingly sold or offered to sell any material part of an allegedly infringing product in Delaware").

Moreover, a finding that the Court could assert personal jurisdiction over Tucker based on the facts above would not comport with traditional notions of fair play and substantial justice. The constitutional requirements of the Due Process Clause require minimum contacts such that a defendant would have "fair warning" that suit might be brought against him in the district. *See Turner*, 694 Fed. App'x at 65-66. Plaintiff fails to explain how Mr. Tucker's signature on a distribution contract between his company and McKesson would provide the individual defendant with fair warning that suit might be brought against him in his personal capacity in Delaware. For these reasons, Plaintiff has failed to meet its burden of showing that personal jurisdiction is proper over Mr. Tucker. Rather than dismiss the case against Mr. Tucker, however, the Court will exercise its discretion to transfer the case to a forum where there is jurisdiction.

shield is raised, "all forum related contacts, including those taken in an employee's fiduciary capacity, should be considered in determining whether to exercise personal jurisdiction over the individual." *Tristrata*, 961 F. Supp. at 690.

Courts have recognized "an exception to the fiduciary shield doctrine where the corporation is a mere shell for its owner" such that the "employee-owner's actions may be viewed as having been taken on his own behalf and it would not be fair to allow the owner to hide behind the fiduciary shield." *Plummer*, 533 A.2d at 1246. In its papers, Plaintiff argues that the fiduciary shield doctrine does not apply to Tucker because he "directly designed, facilitated, and negotiated a distribution contract with McKesson," "directed the listing of Method's EEMT product on drug databases," "has a clear personal financial interest in the misconduct alleged" and "his actions were for his own individual pecuniary interest." (*Id.* at 13-14). In its Complaint, Plaintiff alleged that Tucker "directed, sanctioned, actively participated in, and voluntarily and intentionally caused" Method's purported "unlawful conduct." (D.I. 1 at ¶ 42). Plaintiff's conclusory allegations, however, are insufficient to confer jurisdiction.

Plaintiff has failed to establish that Tucker took any acts as a fiduciary for Method in Delaware. *See Tristrata*, 961 F. Supp. at 690 ("the employee's acts as a fiduciary must still occur in Delaware"). In *Tristrata*, the Court was asked to find personal jurisdiction over an individual defendant who was the president, 100% stockholder, and researcher for a company, and had participated in the national advertisement of the company's products. *Id.* The Court found that it lacked the authority to exert personal jurisdiction, noting that national advertising "is insufficient to qualify as transacting business . . . in Delaware . . . unless it is shown that the advertising is part of a 'sustained promotion campaign directed at Delaware,'" and his "position as president, stockholder and researcher . . . would be insufficient to establish jurisdiction." *Id.*

10

As to his role at Method, the fiduciary shield doctrine "prohibit[s] acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual." *TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.*, 961 F. Supp. 686, 690 (D. Del. 1997); *Brasure's*, 2017 WL 3269082, at *4 (internal citation and quotation marks omitted); *Ruggiero v. FuturaGene, plc*, 948 A.2d 1124, 1134 (Del. Ch. 2008) ("[A] corporate director or officer of a corporation cannot be haled into a Delaware court for an act of the corporation simply because the officer or director has directed the corporation to take that act.) It is an equitable doctrine that should be applied with a "sound exercise of discretion." *Plummer & Co. Realtors v. Crisafi*, 533 A.2d 1242, 1246 (Del. Super. Ct. 1987).[4] When fiduciary

---

Similarly, subsection (c)(1) applies when a defendant "[t]ransacts any business or performs any character of work or service in the State," and subsection (c)(2) applies when a defendant "[c]ontracts to supply services or things in this State." 10 Del. C. § 3104(c). Both subsections require "that the cause of action arise from the defendant's conduct in the forum state." *Shoemaker*, 556 F. Supp. 2d at 354-55. There is no evidence to contradict Defendants' sworn statements that Defendant has not transacted business, performed work or entered into any contracts to supply products in Delaware in his personal capacity.

4  Plaintiff argues in its papers that the Court may exert personal jurisdiction over the individual defendant because "Mr. Tucker and Method are one and the same" and "[u]pon information and belief, Defendant Tucker directed, sanctioned, actively participated, and voluntarily and intentionally caused" the injury to Plaintiff. (D.I. 13 at 12-13). Though this (in combination with citation to cases referring to "alter-ego" exceptions to the fiduciary shield doctrine) suggests that the theory of alter ego should apply to Tucker, Plaintiff makes no argument and offers no facts indicating that the business entity is merely the alter ego of Mr. Tucker. To make a showing of alter ego, Plaintiff would have had to have shown that "(1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 521, 528 (D. Del. 2008). The Third Circuit has set out a seven-factor test for determining whether the corporation and its shareholders make up a "single economic entity" including "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Id.* at 528-29 (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d. Cir.1981)). No showing – beyond conclusory allegations – has been made with respect to any of these factors.

trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Id.* at 879-80 (citations omitted). The public interests include:

"the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* Though the *Jumara* court notes that courts have "broad discretion to determine, on an individualized, case-by-case, whether convenience and fairness considerations weigh in favor of transfer," *Id.* at 883, the Third Circuit has previously held that "unless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

### III. ANALYSIS

#### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

##### 1. Personal Jurisdiction Over Matthew Scott Tucker

As noted above, Plaintiff's assertion of personal jurisdiction with respect to Tucker is that "Mr. Tucker and Method are one and the same" and thus "jurisdiction over Mr. Tucker is proper for the reasons discussed with respect to Method." (D.I. 13 at 12-13). There does not appear to be any dispute that, aside from Tucker's role and acts as the Founder and President of Method, the Court cannot exercise jurisdiction over Mr. Tucker.[3]

---

[3] The Court agrees that there is no jurisdiction over Mr. Tucker in his personal capacity. General jurisdiction under subsection (c)(4) requires that Tucker (a) regularly does or solicits business in Delaware, (b) engages in any other persistent course of conduct in Delaware, or (c) derives substantial revenue from services in Delaware. 10 Del. C. § 3104(c)(4). It requires a defendant to be "generally present in the state." *Applied Biosystems*, 772 F. Supp. at 1469. Mr. Tucker has no connections with this district and has never visited the state. (Tucker Decl. at ¶¶ 4-9). There is no allegation of facts suggesting "systematic and continuous" contacts between Tucker and Delaware

8

'fair warning' that he might be sued there – before a federal court in that forum can constitutionally exercise personal jurisdiction over that defendant." *Turner*, 694 Fed. App'x at 65-66 (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008)). General jurisdiction over a foreign entity only exists where that entity's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

### B. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses," *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). The Third Circuit has recognized that:

> "[i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a). *Id.* The private right included:

> "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for

7

there is a statutory basis for jurisdiction under the Delaware long-arm statute." *Id.* (citing 10 Del. Code § 3104(c)). "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates [defendants'] constitutional right to due process." *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310 (1945)); *see also IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998).

Delaware's long arm statute, 10 Del. C. § 3104, provides in pertinent part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> (2) Contracts to supply services or things in this State;
>>
>> [. . .]
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Subsections (c)(1) and (c)(2) provide for specific jurisdiction where the cause of action arises from the defendant's contacts with the forum. *Shoemaker v. McConnell,* 556 F. Supp. 2d 351, 354-55 (D. Del. 2008). "Subsection (c)(4) provides for general jurisdiction, which requires a greater extent of contacts, but which provides jurisdiction even when the claim is unrelated to the forum contacts." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1466 (D. Del. 1991) (citing *LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del. 1986)).

As for the second prong, the Due Process Clause "requires that a non-resident defendant have certain minimum contacts with a forum state – contacts that would provide the defendant

6

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court may dismiss a suit for lack of jurisdiction over a person. When a defendant challenges a court's exercise of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Turner v. Prince Georges County Public Schools*, 694 Fed. App'x 64, 66 (3d Cir. 2017) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "To meet this burden, the plaintiff must produce 'sworn affidavits or other competent evidence,' since a Rule 12(b)(2) motion 'requires resolution of factual issues outside of the pleadings.'" *Brasure's Pest Control, Inc. v. Air Cleaning Equip., Inc.*, C.A. No. 17-323-RGA-MPT, 2018 WL 337747, at *1 (D. Del. Jan. 9, 2018) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, [however], the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002)).

Two requirements, one statutory and one constitutional, must be satisfied for personal jurisdiction to exist over a defendant. *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). "First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Id.* (citing Fed. R. Civ. P. 4(e)). The Court must, therefore, "determine whether

> Method also admits that is has listed its EEMT product in the national pharmaceutical databases Medi-Span and First Databank. . . . These databases have nationwide reach and are an essential advertising tool for drug products. Method promotes its EEMT drug products in those databases so that Delaware pharmacists will order its EEMT drug products, and Delaware insurance companies will list its EEMT drug products in formularies for reimbursement. . . . Method's nationwide advertising of its EEMT drug products in the drug databases along with its distribution contract with McKesson ensures that its EEMT drug products will be dispensed in Delaware and creates personal jurisdiction in Delaware over Defendants Method and Tucker.

(D.I. 13 at 1-2 (internal citations omitted)). Plaintiff adds that Method is also a pharmaceutical vendor for the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP") purchasing collective for pharmaceutical products which Delaware has contracted to be a part of. (*Id.* at 1, 8).

With respect to Mr. Tucker, Plaintiff asserts that "Mr. Tucker and Method are one and the same."[2] (D.I. 13 at 12).

> Mr. Tucker is the Founder and President of Method, and he does not indicate that anyone else has any ownership interest in the company. . . . As such, Mr. Tucker has a clear personal financial interest in the misconduct alleged in the Complaint. The fiduciary shield doctrine does not apply to Mr. Tucker because he was not merely acting at the direction of Method. As Method's owner and President, his actions were for his own individual pecuniary interest. He acted at his own behest, not that of a supervisor, which is the type of situation in which the fiduciary shield doctrine is typically invoked. As Method's owner and President, Mr. Tucker directly designed, facilitated, and negotiated a distribution contract with McKesson. Further, he directed the listing of Method's EEMT product on drug databases.

(*Id.* at 12-13).

---

[2] In its brief, Plaintiff requested permission to obtain jurisdictional discovery. (D.I. 13 at 11, n.5). The Court notes that a case management order allowing discovery to occur was entered on April 24, 2108 (D.I. 21), but Plaintiff did not provide any additional facts to support its jurisdictional claims in response to the request from the Court. (D.I. 46).

4

> Services ("ClarusOne"), for the supply of certain estrogens-methyltestosterone ("EEMT") pharmaceutical drug product. McKesson subsequently awarded the bid to Method. On August 9, 2017, McKesson sent the subject contract to Method for acceptance by email from McKesson's Irving, Texas offices. None of the EEMT product Method shipped to McKesson pursuant to this contract was delivered by Method to McKesson in Delaware.
>
> 9.    The communications between Method and McKesson relating to this bid award involved, other than Method employees, individuals located in Irving, Texas and London, United Kingdom. These non-party individuals include Cristi Mahoney and Nicholas Richardson located in Irving, and Elme Albertse located in London. None of these communications involved individuals located in Delaware, and none of these communications occurred in Delaware.

Moreover, while Method listed its EEMT drug on national pharmaceutical databases – including Medi-Span and First DataBank Method asserts that "[p]harmaceuticals cannot be purchased from, or sold by Method through these listing databases and entities and persons cannot directly contact Method through these databases." (*Id.* at ¶¶ 10-12).

The Tucker Declaration attests that Mr. Tucker resides in Ft. Worth, Texas. (D.I. 12, Ex. B at ¶ 3). He has never resided, been employed, transacted business, paid taxes, held bank accounts or assets, owned or leased property, or commenced litigation in Delaware. (*Id.* at ¶¶ 4-8). He states that he has "never traveled to the State of Delaware." (*Id.* at ¶ 9).

Plaintiff responds that "Method's sales activities establish personal jurisdiction pursuant to 10 Del. C. § 3104(c)(1), (2), and (4)," because Method

> entered into a distribution contract with McKesson Corporation ("McKesson"), a Delaware corporation, that distributes pharmaceuticals at a retail sale level throughout this District, and throughout the United States. . . . McKesson is the largest distributor of pharmaceutical drugs and medical devices in the United States, and it ranks 5th on the Fortune 500 ranking of America's largest corporations, with revenues in excess of $190 billion. . . . Method admits that it has no control over where McKesson distributes its products. . . . Method is fully aware that McKesson, the largest drug distributor in the United States, distributes drug products nationwide through Walmart and Rite Aid pharmacies. Method understands that McKesson's nationwide distribution includes the state of Delaware, and makes no allegation that its contract with McKesson excludes its products from the Delaware market.

3

mentioned unlawful conduct by the corporate Defendants." (*Id.* at ¶ 42). Based upon these actions, Plaintiff alleges that "Defendants have caused harm to Plaintiff in this District." (*Id.* at ¶ 11).

In the present motion, Defendants argue that they "have no connection with Delaware" and thus "lack sufficient 'minimum contacts' with this district to permit the exercise of specific or general jurisdiction." (D.I. 12 at 2). In support of this, Defendants have submitted two declarations from Tucker, one on behalf of Method Pharmaceuticals, LLC ("Method Declaration"), (D.I. 12, Ex. A), and one on behalf of Tucker, himself ("Tucker Declaration"). (D.I. 12, Ex. B). The Method Declaration attests that Tucker is the President of Method "a Texas limited liability company, whose sole member is Matthew Scott Tucker" and whose "corporate headquarters are located at 7333 Jack Newell Blvd. N., Suite 300, Fort Worth, Texas 76118." (*Id.* at ¶¶ 2-4). The Method Declaration states the following with respect to Method (D.I. 12, Ex. A at ¶¶ 5-7):

> 5.  Method is a small company, having less than 10 employees. All of Method's employees reside in or, if they reside elsewhere, are employed out of Texas. None of Method's employees reside in Delaware, travel to Delaware for work, or otherwise perform any of their job duties in Delaware. Method also does not have any representatives or agents in the State of Delaware, including any registered agents.
>
> 6.  Method does not own or lease any offices or other facilities in Delaware, does not have a Delaware telephone number or mailing address, does not have any bank accounts in Delaware, does not hold assets of any other kind in Delaware, is not licensed to do business in Delaware, has never paid any taxes of any kind to the State of Delaware, and has never commenced any litigation in Delaware.
>
> 7.  Method does not solicit business in Delaware, does not advertise or market in Delaware, has never directly shipped any pharmaceutical product to Delaware, and does not derive substantial revenue from Delaware.

Regarding McKesson, the Method Declaration avers that "Method is not affiliated with McKesson in any capacity and the two companies are entirely independent of one another." (*Id.* at ¶ 10). It explains (*id.* at ¶¶ 8-9):

> 8.  On July 25, 2017, Method sent a bid to McKesson Corporation ("McKesson"), through McKesson's sourcing joint-venture ClarusOne Sourcing

2